UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CASE NO.: 4:24-CR-070-1 |
| ) | |
| BRYAN LAMONT PETERSON ) | |
| ) | |

## PLEA AGREEMENT

Defendant Bryan Lamont Peterson, represented by his counsel Juanita M. Holsey, and the United States of America, represented by Assistant United States Attorney Ryan Bondura, have reached a plea agreement in this case. The terms and conditions of that agreement are as follows.

1. <u>Guilty Plea</u>

Defendant agrees to enter a plea of guilty to Count Two of the Indictment, which charges a violation of 18 U.S.C. § 1708, Possession of Stolen Mail.

2. <u>Elements and Factual Basis</u>

The elements necessary to prove the offense charged in Count Two are (1) the mail matter described in the indictment was stolen from the United States mail; (2) the Defendant possessed the mail matter after it was stolen; and (3) the Defendant knew that that the mail matter was stolen.

Defendant agrees that he is, in fact, guilty of this offense. He agrees to the accuracy of the following facts, which satisfy each of the offense's required elements:

On or about April 2, 2024, in Chatham County, in the Southern District of Georgia, the Defendant Bryan Lamont Peterson and Co-Defendant Joseph Thomas

Morris, aided and abetted by each other, did knowingly and unlawfully possess mail matter which had been stolen from an authorized depository for mail matter located in Savannah, Georgia, to wit: mail addressed from Fidelity Memorial Group, located at 2794 US-80 W, Garden City, Georgia 31408.

Specifically, on the morning of March 30, 2024, in Savannah, Georgia, located within the Southern District of Georgia, the United States Postal Inspector Service ("USPIS") became aware of two individuals involved in mail theft from USPS collection boxes. Specifically, these individuals were operating a silver Chevrolet Malibu bearing Florida tag JKPZ19. After running the license plate, USPIS determined that the Malibu was also a rented vehicle. This vehicle was seen by license plate readers located throughout the city at very early morning hours in the vicinity of several post offices. Further, the vehicle was also seen on a license plate reader on a Holland Drive in Savannah. On April 1, 2024, USPIS was able to locate where the suspected vehicle had been parked overnight, specifically on Talina Lane in Savannah, Georgia. USPIS then conducted surveillance on the vehicle during the day and was able to identify the driver as Defendant Peterson and the passenger as Co-Defendant Morris.

In the early morning of April 2, 2024, at approximately 1:30a.m., USPIS was alerted to the tampering of multiple USPS collection boxes at a post office in Savannah. A review of electronic surveillance revealed the same Chevrolet Malibu having tampered with these USPS collection boxes. USPIS then went to Talina Lane, where the Chevrolet Malibu was again parked with the lights still active.

USPIS called Savannah Police Department marked units to assist in a potential arrest. When these units arrived at Talina Lane and approached the vehicle, Defendant Peterson fled on foot from the area.

A search of the Chevrolet Malibu revealed several items of note, including: 11 pieces of mail on the ground next to the passenger seat, 1 piece of mail on the ground next to the driver's seat, and on the center console there were several checks and money orders which had already been removed from the mail. Additionally, a USPS Arrow key, bearing serial number 393-14913, was found on resting on the center console and several more pieces of mail were in the back seat. In total, 92 pieces of mail were recovered from the Chevrolet Malibu.

Neither nor Defendant Peterson nor Co-Defendant Morris had permission or authority to possess any of the mail matter recovered from the vehicle. Included in the stolen mail were checks totaling at least $35,000 and there were at least 10 intended victims. All these occurrences happened within the Southern District of Georgia

Defendant agrees the government would have proven the foregoing facts beyond a reasonable doubt at any trial on the merits.

3. <u>Possible Sentence</u>

Defendant's guilty plea will subject him to the following possible sentence: not more than 5 years imprisonment, not more than 3 years supervised release, a $250,000 fine, such restitution as may be ordered by the Court, and forfeiture of all

forfeitable assets. The Court additionally must impose a mandatory $100 special assessment.

4. <u>No Promised Sentence</u>

No one has promised Defendant that the Court will impose any particular sentence or a sentence within any particular range. The Court is not bound by any estimate of sentence given or recommendations made by Defendant's counsel, the government, the U.S. Probation Office, or anyone else. The Court may impose a sentence up to the statutory maximum. Defendant will not be allowed to withdraw his plea of guilty if he receives a more severe sentence than he expects.

5. <u>Court's Use of Sentencing Guidelines</u>

The Court is obligated to use the United States Sentencing Guidelines to calculate the applicable guideline range for Defendant's offense. The Sentencing Guidelines are advisory; the Court is not required to impose a sentence within the range those Guidelines suggest. The Court will consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a), in determining the Defendant's sentence. The Sentencing Guidelines are based on <u>all</u> of Defendant's relevant conduct, pursuant to U.S.S.G. § 1B1.3, not just the conduct underlying the particular Count or Counts to which Defendant is pleading guilty.

6. <u>Agreements Regarding Sentencing Guidelines</u>

    a. <u>Use of Information</u>

4

Nothing in this agreement precludes the government from providing full and accurate information to the Court and U.S. Probation Office for use in calculating the applicable Sentencing Guidelines range.

b.   Acceptance of Responsibility

If the Court determines that Defendant qualifies for an adjustment under U.S.S.G. § 3E1.1(a), and the offense level prior to operation of § 3E1.1(a) is 16 or greater, the government will move for an additional one-level reduction in offense level pursuant to Section 3E1.1(b) based on Defendant's timely notification of his intention to enter a guilty plea.

c.   Amount of Loss

The government and Defendant agree to recommend to the U.S. Probation Office and the Court at sentencing that the amount of loss, for purposes of Section 2B1.1 of the Sentencing Guidelines, is less than $95,000.

d.   Low End of Guidelines Range

The government will recommend that Defendant be sentenced to the low end of the advisory Guidelines range determined by the Court at sentencing.

7.   Dismissal of Other Counts

At sentencing, the government will move to dismiss any other Counts of the Indictment that remain pending against Defendant.

8.   Abandonment of Property

Defendant waives and abandons Defendant's interest in any property that may have been seized in connection with this case. Specifically, the Defendant agrees that

upon entry of his guilty plea the Government is free to release all the stolen mail back to its sender and the Defendant will raise no objections, at sentencing or otherwise, that would necessitate the production of the mail in Court.

9. <u>Financial Obligations and Agreements</u>

    a.     <u>Restitution</u>

The amount of restitution ordered by the Court shall include restitution for the full loss caused by Defendant's total criminal conduct. Restitution is not limited to the specific counts to which Defendant is pleading guilty. Any restitution judgment is intended to and will survive Defendant, notwithstanding the abatement of any underlying criminal conviction.

    b.     <u>Special Assessment</u>

Defendant agrees to pay a special assessment in the amount of $100.00, payable to the Clerk of the United States District Court, which shall be due immediately at the time of sentencing.

    c.     <u>Required Financial Disclosures</u>

By the date that Defendant enters a guilty plea, Defendant shall complete a financial disclosure form listing all his assets and financial interests, whether held directly or indirectly, solely or jointly, in his name or in the name of another. Defendant shall sign the financial disclosure form under penalty of perjury and provide that form to the Financial Litigation Unit of the United States Attorney's Office and to the United States Probation Office. Defendant authorizes the United States to obtain credit reports on Defendant and to share the contents of those reports

with the Court and the United States Probation Office. Defendant also authorizes the United States Attorney's Office to inspect and copy all financial documents and information held by the United States Probation Office.

    d.    <u>Financial Examination</u>

Defendant will submit to an examination under oath on the issue of his financial disclosures and assets if deemed necessary by the United States. Such examination will occur not later than 30 days after the entry of Defendant's guilty plea.

    e.    <u>No Transfer of Assets</u>

Defendant certifies that he has made no transfer of assets in contemplations of this prosecution for the purpose of evading or defeating financial obligations created by this Agreement or that may be imposed upon him by the Court at sentencing. Defendant promises that he will make no such transfers in the future.

    f.    <u>Material Change in Circumstances</u>

Defendant agrees to notify the United States of any material change in circumstances, as described in 18 U.S.C. § 3664(k), that occurs prior to sentencing in this case. Such notification will be made within seven days of the event giving rise to the changed circumstances, and in no event later than the date of sentencing.

    g.    <u>Enforcement</u>

Any payment schedule imposed by the Court is without prejudice to the United States to take all actions and remedies available to it to collect the full amount of the financial obligations imposed by the judgment of the Court in this case. Defendant

understands and agrees that the financial obligations imposed by the judgment of the Court in this case will be placed on the Treasury Offset Program so that any federal payment that Defendant receives may be offset and applied to the judgment debt without regard to or affecting any payment schedule imposed by the Court.

10. <u>Waivers</u>

   a. <u>Waiver of Appeal</u>

   Defendant entirely waives his right to a direct appeal of his conviction and sentence on any ground (including any argument that the statute to which the defendant is pleading guilty is unconstitutional or that the admitted conduct does not fall within the scope of the statute). The only exceptions are that the Defendant may file a direct appeal of his sentence if (1) the court enters a sentence above the statutory maximum, (2) the court enters a sentence above the advisory Sentencing Guidelines range found to apply by the court at sentencing; or (3) the Government appeals the sentence. Absent those exceptions, Defendant explicitly and irrevocably instructs his attorney not to file an appeal.

   b. <u>Waiver of Collateral Attack</u>

   Defendant entirely waives his right to collaterally attack his conviction and sentence on any ground and by any method, including but not limited to a 28 U.S.C. § 2255 motion. The only exception is that Defendant may collaterally attack his conviction and sentence based on a claim of ineffective assistance of counsel.

   c. <u>FOIA and Privacy Act Waiver</u>

Defendant waives all rights, whether asserted directly or through a representative, to request or receive from any department or agency of the United States any record pertaining to the investigation or prosecution of this case under the authority of the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a, and all subsequent amendments thereto.

d. <u>Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410 Waiver</u>

Rule 11(f) of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence ordinarily limit the admissibility of statements made by a defendant during the course of plea discussions or plea proceedings. Defendant knowingly and voluntarily waives the protections of these rules. If Defendant fails to plead guilty, or his plea of guilty is later withdrawn, all of Defendant's statements in connection with this plea, and any leads derived therefrom, shall be admissible for any and all purposes.

11. <u>Defendant's Rights</u>

Defendant has the right to be represented by counsel, and if necessary have the court appoint counsel, at trial and at every other critical stage of the proceeding. Defendant possesses a number of rights which he will waive by pleading guilty, including: the right to plead not guilty, or having already so pleaded, to persist in that plea; the right to a jury trial; and the right at trial to confront and cross-examine adverse witnesses, to be protected from compelled self-incrimination, to testify and present evidence, and to compel the attendance of witnesses.

12. <u>Satisfaction with Counsel</u>

Defendant has had the benefit of legal counsel in negotiating this agreement. Defendant believes that his attorney has represented him faithfully, skillfully, and diligently, and he is completely satisfied with the legal advice given and the work performed by his attorney.

13. <u>Breach of Plea Agreement</u>

If Defendant fails to plead guilty, withdraws or attempts to withdraw his guilty plea, commits any new criminal conduct following the execution of this agreement, or otherwise breaches this agreement, the government is released from all of its agreements regarding Defendant's sentence, including any agreements regarding the calculation of Defendant's advisory Sentencing Guidelines. In addition, the government may declare the plea agreement null and void, reinstate any counts that may have been dismissed pursuant to the plea agreement, and/or file new charges against Defendant that might otherwise be barred by this plea agreement. Defendant waives any statute-of-limitations or speedy trial defense to prosecutions reinstated or commenced under this paragraph.

14. <u>Entire Agreement</u>

This agreement contains the entire agreement between the government and Defendant.

|  |  |
|---|---|
|  | JILL E. STEINBERG |
|  | UNITED STATES ATTORNEY |
| 10/15/24 | /s/ E. Greg Gilluly |
| Date | E. Greg Gilluly |
|  | Deputy Chief, Criminal Division |
|  |  |
| 10/15/24 | /s/ Ryan Bondura |
| Date | Ryan Bondura |
|  | South Carolina Bar No. 104079 |
|  | Assistant United States Attorney |

I have read and carefully reviewed this agreement with my attorney. I understand each provision of this agreement, and I voluntarily agree to it. I hereby stipulate that the factual basis set out therein is true and accurate in every respect.

10/16/24
Date

_____
BRYAN LAMONT PETERSON, Defendant

I have fully explained to Defendant all of his rights, and I have carefully reviewed each and every part of this agreement with him. I believe that he fully and completely understands it, and that his decision to enter into this agreement is an informed, intelligent, and voluntary one.

10/16/2024
Date

_____
Juanita M. Holsey, Defendant's Attorney